Gary Gorski appearing on behalf of the appellant. With me here today is Co-Counsel Daniel Caroline. Good morning, Your Honors. The first issue I want to address is the Court's failure to rectify our motion for discovery sanctions for the government's failure to turn over evidence that was critical in this trial. In 2002, a motion was filed for two reclusive sanctions because the government failed to turn over original documents and instead gave us computer-generated forms that had no signatures on them. I think before the Court's own edification, it would help if I explained the factual basis behind this because this is very important. And I noticed before me that you had your notes here, but I'd really like to look at the excerpts of record that would help direct the Court's attention to what I'm talking about because I know that as you go through this, it's difficult to put together the pieces of the puzzle, but I think a picture is worth a thousand words. And the first picture I would direct your attention to is the appellant's excerpt of record, which would be Exhibit No. 7, which was a photograph of a computer screen. What's your reference on the excerpt of record, please? It's the appellant's excerpt of record, Item 1 of 2, and it's No. 7. And the next couple of documents all relate to that one picture. And I'll get into this later, but the case department and a special agent with the GSA took that photograph, and what prompted them to take this photograph relates to the secondary issue in this case, which was the Tony Richmond Declaration, and we tried to get that in, either President West's recollection recorded or an excited utterance. And as Agent Hartman testified at trial, he took this photograph of Tony Richmond's pointing at the computer screen saying, Hey, I typed in a promotion to my client, Mr. Curran, and it's gone, it's missing now. It was an excited utterance. He was caught off guard, right? He testified in his record, in his transcript, that he could not print the screen out, so the next best thing he could do is take a picture. Now, why this is important, and I'll draw your attention now to what is Exhibit 10. During the setup in this case, I took the deposition of the person most knowledgeable. At that deposition, we had a document request for them to hand over all personal actions dealing with GSA during a relevant time period. And what they handed us was Exhibit 10, which was the promotion of Arthur Klaby, and Exhibit 11, which was the promotion of a Jim McDonald. And in the upper right-hand corner of those two documents, you'll see a request number. It says 9PS-8-055, and on the other one, 054. Directing this Court's attention now to Exhibit 8. This is what's called an SF-52 log. Those forms that you're looking at, Exhibits 10 and 11, those are a personal act that Tony Richman would have performed, and you can see her name on it, Tony Richman, and above it says promotion. A log, which is Exhibit number 8, has a request number column to it, and each one of those existing numbers has corresponding numbers on those action forms. And if we look at page 2 on the log, on April 2, 1998, all of a sudden the log stops. And if you see there 054 and 055, which was the promotion of Arthur Klaby and James McDonald, there's no annotations in the log. So something's happening on this date. What we find was the original signed documents for those actions. What the government turned over to us in 2001, I believe, was just a printout from a computer called eForms, which was the photograph that you see there, Exhibit number 7. So that's it. The District Court, I mean, all of this was brought to the attention of the District Court, and the District Court took it under advisement, right? Yes, Your Honor. The reason I'm trying to get to it is because it's happened over such a long period of time, and I want to point to what the District Court did in a ruling on my motion. Because she took it and said there's not enough evidence at this point in time. She says if documents are missing or withheld, then she would rule that it was bad faith. And I will prove to this Court yesterday that documents were later produced, should have been produced in 2004, the second trial, which were never produced, and the judge said if those documents were withheld, then that's bad faith. Okay, but we don't take evidence here. So all of this would have to be given to the District Court for the District Court to make a ruling. Your argument is that it was given to the District Court and the District Court did not make a ruling. Is that your argument? Okay. Well, she did not make a ruling on my original motion because in her – I'll point to that real quickly here. She made a ruling post-trial or something, somewhere. Right. She brought this up. Correct, Your Honor. Okay. And my understanding of this, it has to be an abuse of discretion is why you review this. Exactly. So that was my next question. If she ruled on it in conjunction with denying your motion for a new trial, why doesn't that satisfy her obligation to make the ruling? She did abuse her discretion in a prior proceeding. My motion, first of all, was filed on December 3, 2002, and that's Exhibit No. 4 to the Appellee Supplemental Excerpt of Record, Volume 1. And attached to that, I gave all the exhibits that were handed over in discovery, and plenty of the exhibits don't have handwritten signatures on them or any type of writing. They're just printed out forms. And directing the Court's attention to Exhibit No. 12 of the Appellant's Excerpt of Record, which is Dave Curran's reclassification. As you can see, there's handwritten notes all over it. And as a testimony came out in trial, this is a thing called a written document. It goes up the chain, approval signature, and personnel sign-off on it. And, in fact, in here, it was originally a classification, but for Danny Holt, Mr. Curran, it is signed. The point came that we needed to have the original document with the handwritten signatures on it. The government only turned it over as a printout from a computer. Now, we addressed it. Let me ask you this, Counsel. Are you taking – are you still saying that she didn't rule on it, or are you saying her ruling was abuse of discretion? I'm saying both, because if we look at – Okay. Commencing, it's on Exhibit No. 9, which is a transcript of dealing with my issue preclusion motions of the Appellant's Supplemental Excerpt of Record, Volume 1. Excuse me, Exhibit 6. In there, first commencing at page – The excerpts of record – I don't have anything behind Tab 6. The excerpts of record that you just had us going to? No, that's gone. Okay. And directing the Court's attention to – they use a nomenclature, S.E.R. 0138. She states there on Line 9 – excuse me, on Line 15 – I'm sorry, that's me talking. What's the page number at the bottom? Page No. 8, but it would have Excerpt of Record 0143. Got it. Okay. Now, I'm going to announce the report as to what's happening here. Okay. Now, we didn't receive the documents. Notice there's a lot of signatures that are missing from these documents. And the Court goes on to say on page 0145 – and this is the heart of the case right here. So on that basis, what I've heard thus far – this is Line 15 on 0145. So on that basis, what I've heard thus far, I'm not willing to conclude that somebody destroyed or intentionally withheld it. And what we're focusing on is withheld documents because in 2004, they did produce the documents. The documents just yet, meaning it's an open issue. I haven't come to that conclusion yet, but she says. So I'm not going to impose a sanction that you ever requested at this point. Now, the judge didn't have the opportunity to review her prior ruling on this, and it's easy for us to sit here today and look at transcripts. At the time of trial in 2004, we did not have this transcript. But what she was doing is taking my – she looked at my motion. She was seriously considering it because she said that did not meet the threshold that documents were withheld. What she said was, you know, you get a chance to go to the jury, and you get to argue to the jury. These entries stop all of a sudden. So you get the benefit of pointing a finger at the government for having these suspicious documents. That's pretty much what I got from how she decided to proceed with this. And then if there were bad faith shown later on, then she would maybe take additional action. And that's where we come to the point of the 2004 trial on the re-trial matter where the court deals with that issue. And that's on – if you look at the appellant's excerpt of record, page – excerpt of record 22. Okay. Page 559. Okay. This is the sidebar we had. Okay. It actually starts on 558. This is at the very last witness the government pulls out in this trial. Now, mind that this whole time, since 2002, we're asking for the original SF-52s for the promotion of Clavie McDonald. And it was to help us through discovery. It's not just for trial, but it's to lead us to other discoverable evidence. As I understand the government's position, it claims that its lawyer had these documents there and said they would provide them to you during the trial. And for some reason, there was a mix-up, and it wasn't ever produced that way. But is that what their position is? That's what their position is. Did they say that to the district judge? Yes, they said that to the district judge. So the district judge had to resolve that as to whether that showed bad faith or not bad faith, right? That's true, Your Honor. But back in 2003, that takes us to a second point. And in 2003, Alice Berry, who is the subpoena that's in custodian of records, was testified as to whether or not those documents existed. What did she say? She said that she looked in the personnel file of Arthur McClavie and James McDonald and that they did not exist. She could not find them. But they were found later. At least the government says that. The government says, yeah, on the last witness on the day of the trial with Mr. Curran. So since 2002, we're asking for the original documents, and all of a sudden, they pull out these documents. Did you ask for a continuance so you could meet the problem of getting them so late? I mean, at the trial. It was his last witness, and that was at the end of the trial. This is one time. But you didn't ask for more time so you could review them or whatever? Judge, I guess your issue is these documents should have been given to me at the very beginning of trial. I mean, before trial, at the original discovery request, so that I could do more discovery. I mean, it changed the whole concept of trial. If we don't get these documents, there's signatures on there, witness identification, things that we can do during discovery. I can advise a client to settle the case because things don't look good for them, or things look great. But it changes your whole trial strategy, most importantly talking about his bad faith and whether or not due process was served and whether or not that client got a fair trial. And also, the district court judge, to resolve this, precluded the government from using these documents, and they were going to use them with their witnesses. So what she said is, well, since you didn't give them to plaintiff's counsel, then you can't use them. So that's kind of how she resolved it. Is that correct? Yes, that's how she resolved it. But keep in mind that I did present a motion at the beginning of all this that she says that she has not found that documents have been withheld. Well, she said it wasn't bad faith. She said, I don't think that it's not going to attribute any fault or blame. So she found that there was no bad faith. If you read the transcripts, Donna, you'll find out the flavor and the essence of it. Well, that's what I'm reading, the transcripts. Yeah, but before that sidebar hearing, there was another time where we brought this issue up before the judge, and she goes, refresh my memory as to what was happening. Remember, these 52 forms are critical to your case. And that's when we had the testimony of Alice Berry come in, who is a custodian of records for GSA. And that would be on appellant's assertive record IE1, number 19. Now, this is 2003. And commencing on the page 2, this is the first day of the hearing, 9 a.m. calendar, Wednesday, April 16, 2003, GSA calls in Alice Berry as a custodian of records because we're asking for where is the McDonald and Claby original form. And at that time, the government was represented by Ms. Ramos. And on page 3, you can see the direct examination, you know, how long you've been working there and so forth. And on page 4, and she talks about the SF-52 law. Now, on page 4, line 7, now turn to the second page of the log there. Do you know whether or not there were any documents that correspond to the last three entries of that page? Remember, the log, page 2 of that log, April 2, 1998, there were no entries made until then. What's going on on that day? She says, no idea. Did you make any attempt to find those documents? Answer, yes, I did. And did you find those documents? No idea. So in 2003, we still don't have any documents. Then on cross-examination by myself, I go on and ask her, on page 4, line 25, did you look in the personnel file of Mr. Claby or Mr. McDonald for those SF-52 documents? Answer, yes, I did. Question, was there anything regarding the promotion of the GS-14 in either one of those files? Her response was, I didn't see anything. So that's in 2003. So now, the judge, I have no evidence to prove that there were any documents in 2004. When do I get to get evidence? It's when they produce the message at the end of trial. They had a chance here in 2003 to give me those documents. They didn't do it. So what we're talking about is equity here in fairness in the proceedings. And a judge has a right to action and discretion. And my position is that she abused her discretion by simply not taking my issue preclusion sanction motion for what it was for, that they withheld documents. And the only way to prove it is by the way the government did here. What did you want from the court? What did you want the court to do? I want the court to strike to the defense. That's what I asked her to do. Actually, you were asking her for her to direct judgment in your favor. Exactly. That's very drastic. It is very drastic. There's also a drastic thing. In 2001, I'm taking the position of the person who was eligible, GSA, and they're withholding documents from me. And yet, when it suits them, in 2004, they bring up their last witness, and the judge directed them to give us copies of the documents before trial, too. But she wouldn't let them use the documents. I mean, her— I understand, Your Honor. But my point is the whole discovery process is ruined because I can't go into certain avenues that you were talking about. I understand, Your Honor. And without that, the fairness of the whole proceeding is defunct because now the jury doesn't get to see the true evidence in the case. Again, I'm making an argument, Ms. Atkinson here. I mean, I'm stuck for less than numbers of copies that exist that should have been way back several years ago. Okay. Once you got the documents, what was on there that was a smoking gun? All the citizens and people that looked at it. What did it prove? What would that prove? Yes. Well, for example, if we take a look at the original copies that's pointed to in my article here, which would be Exhibit No. 8, first of all, on the wall sheet. Okay? The second page on that wall sheet shows there's 054, 055, and 0569, April 2, 1998. We also look at Exhibit No. 12 on my account. I show the record, Volume 1 and 2. On that one, that's the information we're looking for. That's what I'm asking you. What does that information show? Okay. This right here, it shows, for example, and this comes out of the government declaration, she explained that she typed up a promotion for Alzheimer's recurrence. Now, originally, if you look at the title portion of this document, they were classifying the physician. Right? Mm-hmm. But then, when you look at the name on this document, what was the classification on this? It's creating a health position or a security guard position. You're just creating a new position. That's all you're doing. But then, for example, on the same page, you'll notice there's a file being compiled. There's a note on it that says, for example, for 2019, that Mr. Kern was to be reassigned, and his name is handwritten in with the date and signature and everything else. That's on this document. So if someone in GSA did that, do you know what's supposed to be on that? What does that prove? Well, the proof is, is that someone came in and made it a matter of fact when there was going to be a classification, and you take that and come down here, there's some of Richman's declarations, and she typed a commotion that this document wasn't meant to mark one. And the same sort of thing can come out in other documents that were not produced to us. And really, from where we're going now, we really don't have a chance to know what was going to be on all the documents. I understand. Okay. And the other one is this. We have the writing on the corner there that says, cancel slash establish, meaning that they canceled the classification and established the reassignment of that document. But then when we go through other documents, they can't cancel on documents. I mean, I can just go on and on about other history issues, but the real matter is that my client never got a chance to get a discovery document way back when we took the first motion out of the law and had it documented in the press. And the judge said, I did not use the press order, but she didn't state and deny the motion in her initial ruling. And then when the government produced those documents, we didn't have to go back and get a transcript of what the judge actually said. But I do recall mentioning to her, and this is in the record, that I said, I said, hey, you never ruled on that motion, judge. And she said she would go back and take a look at it. And the government just didn't come in and at the last instance say we found the original several years later. I mean, there's no clear case of bad faith on the part of government. Counsel, you're well over your time. Why don't we hear from the government on this? May it please the Court. Andrew Chang from the U.S. Attorney's Office for Stephen Perry, the appellee. There was no misconduct in this case, Your Honor. Judge Hamilton ruled on it on the new trial motion, and she specifically considered the declaration of my colleague, Shanahi Coleman, in which Ms. Coleman stated under penalty of perjury she brought the documents Mr. Gorski sought, the four originals, the originals of Mr. Conrad, Mr. Currant, Mr. Clabby, and Mr. McDonald to trial, and the protocol that So late. Why weren't they produced during the original discovery period? Your Honor, let me sketch the chronology. They were not found for the first trial. Counsel did not issue a document to man for the second trial. There was a continuing obligation. Correct. Issued a trial subpoena. Then, in response to that trial subpoena, we went to the pretrial conference. Judge Hamilton said this is an overbroad trial subpoena. Narrow down your documents to what you really need for trial. Mr. Gorski, six days before trial, shot an e-mail narrowing down his request, including the four documents, the four originals. We were able to find those documents. Where were they? I don't know why it took so long to find them the second time around. Where were they? The custodian had them, and I don't know why it was not produced earlier, or why they were not able to find the originals. What case did you find the originals? And did anybody say to Mr. Gorski, say, we found the originals? And somebody said that before trial? Ms. Coleman's declaration said that she brought the documents to trial, and she informed on the first day of trial, I informed plaintiff's counsel I had the original SF-52 log. What happened to us before trial? When they were found, did somebody say, oh, here are these documents that were requested before? Now, because you have an obligation under the discovery rules that if you have a continuing obligation to provide, and once you find them, you have an obligation to tell them. Did anybody do that? Your Honor, March 2nd was when we got the request, narrowing it down to these six documents. On some period between March 2nd and the first day of trial, the documents were located. On the first day of trial, we brought the documents, and my counsel, my co-counsel, told Mr. Gorski, we have them. But not before trial. So the answer to the question of whether he was notified before trial is no. I think that's right, Your Honor. I think that's right. At least from the declaration of Ms. Coleman, the first time she officially informed Mr. Gorski that we had them in our possession was the first day of trial. Now, were copies made of it to give to Mr. Gorski then, that would have been pretty handy, I suppose. It would have been, Your Honor, and I don't know what I would have done. She just kept them and said, we'll let you have them whenever you call for them, and when a witness gets on that you're going to introduce them by or something like that, right? Yes, Your Honor, but the protocol was followed as to the first two documents, the current original and the Conrad original. When Mr. Gorski asked for those documents, she promptly produced them. There was absolutely no intent on her part or my part to not produce these documents to Mr. Gorski. Is that how the U.S. Attorney does discovery in San Francisco, that you produce the documents at the time of trial with no copies to opposing counsel? Is that the protocol for your office? Your Honor, but this was a trial subpoena. It wasn't a document demand. And so we brought the documents to trial in response to that trial subpoena. But weren't they also responsive to the discovery request as well? Well, Your Honor, no, because there wasn't an original first document request from the second trial. There may have been an original document request from the first trial, but he specifically narrowed down the documents to these six documents elicited in his e-mail. But there was no new discovery schedule, was there, for the second trial? There was, Your Honor. There was a new discovery schedule for the second trial? Yes, because there was another deposition taken. Mr. Curran added another complaint. But was there a scheduling order? Was there a new scheduling order for the second trial that set forth discovery deadlines? I believe there was, Your Honor, because there was a second deposition that had to be completed by a certain time. Where would that be in the record, the second discovery order? I don't think it's there. I don't think it's there. The court probably gave permission to do one or two other depositions, but I don't think there was a new scheduling order for discovery, which meant that the first scheduling order was still in effect, which still meant that anything that was requested in that discovery, during that discovery, was still subject to being turned over if it were found. Right, Your Honor. But the original request, as stated by counsel, was not give me these six documents. It was only until the e-mail six days before trial that we knew precisely what he was looking for. Because the judge made him narrow it down. Correct. If he had kept the broad order, then it would have been encompassed. And so the judge made him narrow it down, but that didn't change the fact that the other discovery requests were still outstanding. That's correct, Your Honor. I don't disagree with that. But, nevertheless, the court concluded that we would not bring documents to trial for the purpose of withholding them from Mr. Gorski. That doesn't make any sense. It doesn't do you much good to get the documents in the midst of trial. There's so much going on, you don't really have time to absorb the effect of the documents, to analyze with your client what they mean. That's a pretty good stall tactic. Well, Your Honor, it certainly was not the intent of our office to do any stalling in that regard. Second of all, there hasn't been anything presented thus far to show what was the significance of these documents. Why did it matter? What was the difference between the originals versus the copies that he had? And, in fact, Mr. Gorski got the best-case scenario at trial. The evidence was suppressed. And he was able then to draw an adverse inference, saying, where are these documents, when he, in fact, knew that they were at counsel's table and had been ruled that they were not admitted. So the documents that were actually admitted into trial were blank documents. Is that right? Correct. And he was then able to argue in the closing argument, where are the originals of the Kladney McDonald SF-52s? He argued that in the closing argument and got the adverse inference. Mr. Gorski indicated that he didn't know about these documents until the last witness came on. Is that what the record shows from your standpoint? No, Your Honor. The record, at least from my co-counsel, Mrs. Coleman, they had the conversation in her declaration at supplemental excerpts record 19, tab 19. She states she brought the documents to trial the first day, and she informed Mr. Gorski that she had them, that she was keeping them in her custody, and that any time he needed to have them to introduce, she would provide the documents to him. And does the district court make any findings regarding who was correct on this miscommunication? She did not. What she said was there was some sort of misunderstanding between Mr. Gorski and Mrs. Coleman, that it was not misconduct, it was an unfortunate misunderstanding between the two parties. I think that she said, I think that Mrs. Coleman said there was no intention to deliberately keep the documents away. And the court said, I believe you, but nevertheless, the plaintiff's counsel did not get the documents. So then she imposed the sanction of not letting the government use those documents as evidence. Your Honor, I'm comfortable just going to the supplemental excerpt of record 93. Mrs. Coleman states as follows. I brought each and every located document to trial on March 8, 2004, and to every day of trial thereafter. On the first day of trial, I informed plaintiff's counsel that I had the original SF-52 log, as well as originals corresponding to the Conrad Currant, Clabbie, McDonald. Were you supplemental excerpts of record what? It's under tab 19, Your Honor, supplemental excerpts of record 893. And it's the Coleman declaration at paragraph 8 and at paragraph 9. And in the ninth paragraph, she said, during the colloquy, meaning with Mr. Gorski, I expressed that I would like to retain control over these originals and that I would produce them to plaintiff throughout the trial as they were requested for witness examination and for admission into evidence. This procedure was followed with respect to the SF-52 log and to the SF-52s pertaining to Mr. Conrad and Mr. Currant. So, in other words, if there were some sort of intent on Ms. Coleman's part or my part to withhold these documents, it just doesn't make sense that we'd have this protocol to produce them. And, in fact, the protocol was followed. Counsel, I don't see a supplemental excerpts of record tab 19. I have my copy. Would that be helpful to the Court? I don't know. Is it volume 2 or volume 1? It's actually volume 4, Your Honor. Oh, okay. I see it. And so it starts at page 892 of the supplemental excerpts of record under tab 19. Unless the Court has other questions with regard to the other issues raised by the appellant. Would you address the time limitation? Sure, Your Honor. There were six hours allotted for the second trial. In fact, Mr. Farside ended up getting about seven and a half hours. Even after his time expired, he was allowed to put on another hour and a half of testimony, both by his expert, which was beyond the expired period, and also allowing him a period for cross-examination. The government put on its case in about five hours. It's not abuse of discretion to have the time limitation because Mr. Gorski, Mr. Kern's counsel, made certain strategic choices. He decided that he wanted to try the underlying protected activity, even though we had agreed to stipulate that, you know, it was protected activity. So he ended up putting on several witnesses to that effect. He also consumed time and put on his client as the last witness on the plaintiff's side. So he had literally about three minutes left by the time his client went on the stand. Nevertheless, even though he was out of time, he was given additional time then to finish his presentation. And it's telling that Mr. Kern at no point points to what he wouldn't have done had he been given another four or five hours. How long did the first trial take? It took 12 hours, but there were two plaintiffs. Twelve hours total? Total. But when he was given additional time, it wasn't a whole lot of time. Was it something like 15 minutes or 20 minutes or something like that? Correct, Your Honor. Correct. Fifteen minutes per witness, though. Yes. But he didn't file anything subsequent to that to show if given more time, the witness would have testified to this? Correct. The overwhelming evidence in the record, Your Honor, does support the jury's verdict in terms of what happened. With regard to whether Mr. Kern's helping Ms. Kohler with a protected activity was the basis for the adverse actions claimed. They alleged five-day suspension, the failure to promote, and the reassignment. There is substantial evidence supporting each of the grounds that GSA took with regard to those three actions. Is it your position that the district court ruled on the discovery sanction motion? Yes, Your Honor, for the new trial motion order in which she concluded there was no misconduct. Unless the court has further questions, we'd ask you to affirm. Thank you. Okay, Mr. Chang. Mr. Gorski, you have substantially exceeded your time. I will allow you one more minute if there's something that you'd like to add. Yes, Your Honor. Thank you. I appreciate that. Just real quick on the Tony Richmond declaration, not being admitted to evidence, was admitted to first trial. Very, very critical piece of evidence. The witness comes in, totally doesn't remember anything. Says, I don't recall every single question. I don't recall doing anything. I don't recall writing the declaration. The contemporaneous aspect, I think, is what the judge was hung up on, that she said it was four months later. It actually wasn't four months later. The promotions were prepared April 2nd, 1998. But Tony Richmond, Agent Hartman, took the photograph. And if you look at the photograph, I think it says that June 6th is the last entry on that. And so sometime on or after June 6th, when Agent Hartman took the photograph, was when Tony Richmond made the excited utterance, Look, look, it's not there anymore. The promotion I typed in on e-form's computer screen is missing. So there's two exceptions that she came in. One, an excited utterance. Or two, her declaration, which was still fresh in her mind two months later, because I think it was signed July 30th. I mean, the contemporaneous aspect deals with was it fresh in her mind, not whether a certain period of time passed. And the rules of evidence are clear on that. And so I think this Court's really, this is a good time for the Court to make an expansion on what does contemporaneous mean. Does it mean? Did the judge explain why it was admitted the first time and not admitted the second time? No, she did not, Your Honor. Oh, well, the first time, Tony Richmond was unavailable as a witness. I took her deposition. We could not track her down. She was trying, she was invasive with this bottom line. And I went all the way to the video scene to get her to appear at this trial. But at the deposition, she appeared, and she did the same thing at the deposition. I don't remember a thing. So the second time she was available. Right. Okay. But we read her deposition transcript as evidence at the first trial. That's how that came in. And also, one more point on that is that Tony Richmond, or excuse me, the judge found, you can look at this on the sidebar issue. She says, I don't see this witness being biased towards one side or the other way. So there is an indicia of trustworthiness in her statement. And the judge says, I don't know if she's pro plaintiff or pro defendant. I can't see it either way. She's just not being cooperative is the bottom line. For whatever reason it is. Does she still work for GSA? No, she no longer worked there. And that came out in the record, too, under her direct examination that she, quote, My experience with GSA was that she was too pleasant. That's what she says. And obviously she held a grudge for whatever reason and didn't want to testify. But when you have a witness sign something under a penalty of perjury that's very specific to what she did, and then come to trial and say, I don't remember anything, it looks like in my handwriting we brought in Kate Parkin, who is the property agent. Specifically, Michael Conrad. We saw her write this declaration out under the penalty of perjury. And I believe it was under the penalty of perjury, not on a napkin. It has the indicia of trustworthiness. And the court's ruling should have been based more on admissibility and not whether or not what weight should be given to her. I think she was looking at the weight that should be given and not whether or not it's admissible. And so on that, I won't submit it. Thank you very much for the additional time. Thank you. Okay. We thank both counsel for the argument. Farrah v. Perry is submitted. And we will take up the last case, which is Renderos v. Ryan.
judges: Siler, Rawlinson, Bybee